## MYERS v BOARD OF ED OF DOVER TWP RURAL SCHOOL DIST et
### (2 Cases)

Ohio Appeals, 3rd Dist, Union Co

Nos 151 & 152. Decided Oct 10, 1933

Milo L. Myers, Marysville, for plaintiffs.
Clifton L. Caryl, Marysville, for defendants.

## OPINION

By GUERNSEY, J.

These cases come into this court by appeal from the Court of Common Pleas of Union County, Ohio. Case Number 151 is an action to enjoin defendants from demanding and collecting from the plaintiff, a tax of 2.70 mills certified under date of the 16th day of March, 1932, by the defendant board of education to the defendant county auditor and by him accepted and levied on the tax duplicate of said rural school district for the tax collection for the year 1931, subsequent to the settlement in February. Case Number 152 is an action brought by the plaintiff against the defendants to enjoin the defendants from demanding and collecting of the plaintiff, a tax at the rate of three mills which was included in the annual budget certified by said board of education to the county auditor during the year 1932, and accepted and levied by him on the tax duplicate of said school district for the year 1932.

Both levies sought to be enjoined are levies purporting to be outside of the fifteen mill limitation and for the current expenses of said school district in an amount equal to the average tax levy voted outside of said limitation for the current expenses of schools, by all the school districts in the state of Ohio which do not participate in the state educational equalization fund.

The General Assembly of Ohio, during its session in the year 1931, passed an act amending §§5625-15 to 5625-18, GC, inclusive, by changing some of the provisions of said sections, and supplementing the same by certain new sections which are now numbered §§5625-17a, 5625-18a, 5625-18b, 5625-18c, 5625-18d and 5625-18e, GC, which enactment became effective on October 14, 1931.

The material changes from the original sections were the amendment of §5625-15 GC so as to include in the purposes for which taxes may be raised outside of the fifteen mill limitation by vote of the people, taxes for a public library of, or supported by, a municipality, township, school district or county, under whatever law organized or authorized to be supported.

Sec. 5625-16 GC substituted provisions for the submission of the special levy for library purposes, for provisions for a petition for recreational levy.

Secs 5625-17 and 5625-18 GC were re-enacted in practically the same form as the original enactment, and six new sections were added to the original enactment, numbered as above mentioned, and relating to participation in state educational equalization fund, and the submission of such question together with a levy for such purpose to the electors of a school district and the levying and collecting of taxes pursuant to such election.

The sections pertinent to both cases, are as follows:

"Sec 5625-18a GC. If the board of education of any school district shall have applied to the director of education for participation in the state educational equalization fund under the provisions of §7595-1 GC for the school year 1931-1932, but cannot make tax levies sufficient to meet the requirements of such section, there shall be submitted to the vote of the electors of such district at the November election in the year 1931, the question whether the people of said district shall approve such application and authorize a tax for the current expenses of the school district outside of the fifteen mill limitation for so long a period as said district participates in said fund, the rate of such extra levy to be not greater than the average levy for the current expenses of schools, authorized by vote of the people in all districts throughout

the state which do not participate in the state educational equalization fund, but in no event to exceed three mills. The board of elections of the county shall submit the question to the electors of the district in accordance with the provisions of §5625-17 GC but the form of the ballot shall be as follows:

"Shall the school district apply for participation in the state educational equalization fund, and levy a tax outside of the fifteen mill limitation for the current expenses of said school district in an amount equal to the average tax levy voted outside of said limitation for the current expenses of schools by all the school districts in the state of Ohio which do not participate in said fund (but in no event to exceed three mills) for such period as the district may continue to participate in said educational fund.

FOR PARTICIPATION IN STATE EDUCATIONAL EQUALIZATION FUND.

AGAINST PARTICIPATION IN STATE EDUCATIONAL EQUALIZATION FUND."

"Sec 5625-18b GC. If the majority of the electors voting thereon at such election vote in favor thereof, the taxing authority of said school district may levy a tax within such school district at such additional rate outside of the fifteen mill limitation during the period and for the purpose stated in the resolution or at any less rate, or for any of said years. The result of the election shall be certified immediately after the canvass by the board of election to the taxing authority, who shall forthwith make the necessary levy and certify it to the county auditor who shall extend it on the tax list for collection after the next succeeding February settlement; in all other years it shall be included in the annual tax budget that is certified to the county budget commission."

"Sec 5625-18d GC. For the purposes of §§5625-18a to 5625-18c GC inclusive, the tax commission shall calculate the average levy voted for the current expenses of schools outside of the fifteen mill limitation by all school districts throughout the state of Ohio which do not participate in the educational equalization fund, which average shall be computed by calculating the total amount of money levied throughout the state under such voted authority and dividing the same into the total duplicate of the aforesaid districts, using the figures of the preceding year."

"Sec 25625-18e. If any extra levy of taxes is voted under the provisions of §§5625-18a to 5625-18c GC inclusive, and any levy voted in years prior to 1931 shall not yet have expired, the rate of such levy voted in such prior year shall be reduced by the amount of the rate voted under the provisions of §§5625-18a to 5625-18c GC inclusive. A school district which votes a levy under the provisions of §§5625-18a to 5625-18c GC inclusive may vote additional levies from time to time under the general provisions of §§5625-15 to 5625-18 GC, inclusive."

The undisputed evidence in this case is to the effect that on the 4th day of September, 1931, the defendant board of education passed a resolution as follows:

"MOTION.

"Made by E. L. Rittenhouse. Seconded by W. A. Diehl. Whereas, the Board of Education of Dover Township School District are of the opinion that the amount of taxes which may be placed within the 15 mill levy limitation will be insufficient to provide adequate amount for the tax limitation of the schools of that district; and whereas, the Board of Education of the Dover Township School District has applied to the Director of Education for participation in the State Educational Equalization Fund as provided by §7595-1 GC for the school year 1931-1932 but cannot make tax levies sufficient to make the requirements of such section, be it resolved:

"1. That it shall be submitted to the voters and electors of the Dover Township School District; (shall the school district apply for participation in the State Educational Equalization Fund, and levy a tax outside of the 15 mill limitation for the current expenses of said school district in an amount equal to the average tax levy voted outside of said limitation for the current expenses of schools by all the school districts in the State of Ohio which do not participate in said fund) but in no event to exceed 3 mills for such period as the district may continue to participate in said educational equalization fund.

"2. That a copy of this resolution as adopted and under the provisions of §5625-18a GC shall be certified to the Board of Deputy State Supervisors and Inspectors of Elections for Union County, Ohio.

"Upon roll call the following vote was passed, Homer Reed, Aye, Walter Diehl, Aye, E. L. Rittenhouse, Aye. Attest: Paul Tossey, Clerk. Homer Reed, President."

and caused a copy of said resolution to be certified to the Board of Deputy Supervisors and Inspectors of Elections for Union County, and that said board of education caused notice of an election to be held in said district on November 3, 1931, to be published, as per the following copy:

"NOTICE OF ELECTION.

"Notice is hereby given that a proposition to levy not to exceed three mills for school purposes for such period as the district may continue to participate in the Educational Equalization Fund, in addition to the maximum rate authorized by law will be submitted to the electors of Dover Rural School District, at the regular election places in said district, on November 3, 1931, between the hours of 6:30 A. M. and 6:30 P. M.

DEPUTY STATE SUPERVISORS OF ELECTIONS

L. W. Hazen, Clerk.

BOARD OF EDUCATION OF DOVER TOWNSHIP RURAL SCHOOL DISTRICT. Homer Reed, Pres.  Paul Tossey, Clerk."

That said board caused ballots to be printed as per the following copy:

"PROPOSED PARTICIPATION IN STATE EDUCATIONAL EQUALIZATION FUND AND TAX LEVY.

Shall the Dover Township Rural School District apply for participation in the State Educational Equalization Fund, and levy a tax outside of the fifteen mill limitation for the current expenses of said School District in an amount equal to the average tax levy voted outside of said limitation for the current expenses of schools by all the School Districts in the State of Ohio which do not participate in said fund (but in no event to exceed three mills) for such period as the district may continue to participate in said Educational Equalization fund.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

For participation in state educational Equalization Fund

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Against Participation in State educational equalization fund."

That on the 3rd day of November, 1931, the electors within said school district used and voted ballots as per the above copy, and on a canvass thereof after the closing of the polls, the board of deputy state supervisors and inspectors of elections duly determined that a majority of said electors duly voted in favor of such proposal.

The result of the election was certified by the board of elections to the school district and thereafter the school district received a communication in the words and figures following, from the Tax Commission of Ohio.

"The Tax Commission of Ohio,
Columbus,
February 2, 1932.

"Morey Liggett,
Auditor, Union County,
Marysville, Ohio.

My Dear Mr. Liggett:

See compliance with §5625-18d, GC, the Commission has found the average tax levy voted for current expenses outside the fifteen mill limitation by all school districts in the State of Ohio, not participating in the State Educational fund to be 2.70 mills.

The average rate will be used by all school districts voting for participation in the state Educational Equalization Fund.

Yours very truly,     .

THE TAX COMMISSION OF OHIO
Ferd R. Becker
County Department."

The school board, after the receipt of said communication, on the 16th day of March, 1932, duly adopted a resolution as follows:

"RESOLUTION ACCEPTING THE RATE CERTIFIED TO THE COUNTY AUDITOR BY THE STATE SCHOOL COMMISSIONER TO BE PLACED ON THE TAX DUPLICATE FOR THE LAST COLLECTION IN 1932.

The Board of Education of the Dover Rural School District, Union County, Ohio, met in special session on the 16th day of March, 1932, at the office of the school board with all members present:

Mr. Harrington moved the adoption of the following resolutions:

WHEREAS, The State School Commissioner has certified to the county auditor a levy of 2.70 mills in compliance with the vote in favor of participation in the Equalization Fund as voted November 1931, therefore be it resolved:

Resolved.  By the Board of Education of the Dover Rural School District, Union County, Ohio, that the amounts and rates, as determined by the State School Commissioner and certified to the county auditor be and the same are hereby accepted, and levied on the tax duplicate of said School District the rate of 2.70 mills for the last collection 1932, and be it further:

Resolved, that the clerk of this board be, and he is, hereby directed to certify a copy

of this resolution to the county auditor of said county.

Mr. Liggett seconded the resolution and the roll being called upon its adoption the vote resulted as follows: Mr. J. H. Harrington, Yea; Mr. C. H. Liggett, Yea; Mr. Pearl Yoder, Yea; Mr. Lester Smith, Yea; Mr. Homer Reed, Yea.

Adopted the 16th day of March, 1932.

Claude N. Strayer,

Clerk, Board of Education of the Dover Rural School District, Union County, Ohio."

and said board caused a copy of said resolution to be certified to the county auditor of Union County, Ohio, who caused a tax of 2.70 mills to be levied on the taxable property of said school district and certified the same to the county treasurer of Union County, Ohio, for collection according to law.

The plaintiff is a real estate owner of said school district and said tax of 2.70 mills appears on the duplicate as a levy against his said real estate.

Plaintiff filed his petition on July 20, 1932, to enjoin the collection of this levy.

The second levy, which was enjoined in the action filed December 28, 1932, in the Court of Common Pleas, and which is now case number 152 in this court, is based on the same state of facts together with the following additional facts:

A Miss Newlove, deputy county auditor of Union County, Ohio, received instructions from the State Tax Commission about August 18, 1932, to the effect that in compliance with §5625-18e, GC, the commission had found the average tax levy voted for current expenses outside the fifteen mill limitation, by all school districts in the state of Ohio not participating in the state educational fund, was for the taxing period of 1932, the sum of three mills; and that she also received the annual budget from the defendant board of education, the budget being for Dover Township Rural School District for the fiscal year of 1933, made out June 24, 1932, by Claude N. Strayer, clerk of the board, in which was an item of "proposed participation in state equalization fund and tax levy authorized by voters November 3, 1931, three mills; and that said deputy auditor, without further authorization, entered said levy of three mills on the tax duplicate of said school district as a levy for State Equalization Fund outside of the fifteen mill limitation. A levy of three mills could have been added to the regular school levy without exceeding

the fifteen mill limitation in the taxing district.

One of the contentions of the plaintiff, common to both cases, is that as the said resolution of the board of education was adopted and certified to the board of elections prior to October 14, 1931, the effective date of said act, that such election on such question was called and held without authority in law.

It is also the contention of the plaintiff that the election was not called or advertised as provided in §§5625-15 and 5625-17 GC, and was therefore void.

It will be noted that under the provisions of §5625-18a, GC, which is a new section, that the only conditions precedent to the submission to a vote of the electors of a school district at the November election in the year 1931, of the question which was submitted at the election on November 3, 1931, in said school district, were the existence of the two facts, first, that the board of education of the school district had applied to the director of education for participation in the State Educational Equalization Fund under the provisions of §7595-1 GC, for the school year 1931-1932, and, second, that such board could not make tax levies sufficient to meet the requirements of such section.

It will also be noted that there is no requirement that any resolution be passed by the board of education. The resolution adopted by the board of education and certified to the board of elections prior to the taking effect of the amended act, although not necessary for the calling of the election, was effective in establishing the existence of the conditions precedent to the holding of said election and the existence of such conditions being established, it was the duty of the board of elections to submit the question at the election without any resolution or certification whatever from the board of education, and the holding of the election under §5625-18a GC was authorized.

The only further provisions with reference to submission mentioned in §5625-18a, GC, are, that the board of elections of the county shall submit the question to the electors of the school district in accordance with the provisions of §5625-17 GC, and that the form of the ballot on such submission shall be as set forth in §5625-18a GC.

Sec 5625-17 GC is naturally divided into five subdivisions as follows:

1. A copy of any resolution adopted as provided in §5625-15 GC shall be certified by the taxing authority to the board of deputy state supervisors and inspectors of

elections for the proper county or counties prior to September 15th in any year, and said board shall submit the proposal to the electors of the subdivision at the succeeding November election.

2. Such board shall make the necessary arrangements for the submission of such question to the electors of such subdivision and the election shall be conducted, canvassed and certified in like manner as regular elections in such subdivision for the election of county officers.

3. Notice of the election shall be published in a newspaper of general circulation in the subdivision once a week for four consecutive weeks prior thereto, setting out the purpose, the proposed increase in rate, and the number of years during which such increase shall be in effect, and the time and place of holding the election.

4. The form of the ballots cast at such election shall be:

(Here follows a form entirely different from the form prescribed in §5625-18a GC).

5. The question covered by such resolution shall be submitted as a separate proposition, but may be printed on the same ballot with any other proposition submitted at the same election other than the election of officers. More than one such question may be submitted at the same election.

It will be noted that the first subdivision above referred to, by its terms applies only to resolutions for elections adopted as provided in §5625-15 GC, and does not in terms apply to proceeding for an election had under the provisions of §5625-18a GC.

As no resolution of the board of education was required to hold an election under the provisions of §5625-18a GC as above mentioned, and as the first subdivision of §5625-17 GC is limited by its terms to resolutions adopted pursuant to §5625-15 GC, it is clear that the subdivision does not apply to elections held under the provisions of §5625-18a GC.

The second subdivision of §5625-17 GC is of unlimited application and applies to elections under §5625-18a GC.

The third subdivision of §5625-17 GC certain provisions are inconsistent with the holding of an election under the provisions of §5625-18a GC in the year 1931, as expressly provided in said §5625-18a GC, in that under such subdivision notice of an election must be given for four consecutive weeks prior to the election, and there was insufficient time elapsing between the effective date of the act, October 14, 1931, and the date of the election, November 3, 1931, to publish such notice.

Other provisions of this subdivision re-

quiring the notice to set out "the proposed increase in rate" and "the number of years such increase shall be in effect" clearly relate to elections under the provisions of §5625-15 GC when the form of ballot set out in §5625-17 GC is required to be used, and are clearly inapplicable to elections under §5625-18a GC, where a different form of ballot is prescribed.

The ordinary rule is that statutes must be construed, if possible, in such a manner as to make them effective, and applying this rule it is clear that it was not the legislative intent to apply the provisions of this subdivision to elections held pursuant to §5625-18a GC, as such application would defeat the purpose of the act.

The fourth subdivision of §5625-17 GC has no application to elections held under §5625-18a GC as the latter section sets forth the form of ballot to be used in elections under its provisions which is entirely different from the form of ballot prescribed by said subdivision.

The fifth subdivision of §5625-17 GC being capable of general application, is applicable to an election under §5625-18a GC.

Throughout the entire act, the legislature treats an election held under the provisions of §5625-18a GC as an entirely separate and distinct proposition from an election held under the provisions of §5625-15 to §5625-18 GC, inclusive, expressly providing in the latter part of §5625-18e, GC that: "a school district which votes a levy under the provisions of §§5625-18a to 5625-18c GC, inclusive, may vote additional levies from time to time under the general provisions of §§5625-15 to 5625-18 GC, inclusive."

We therefore hold that under the provisions of §5625-15 GC, in so far as they apply to elections held under §5625-18a GC, it was immaterial that the resolution was not adopted and certified to the board of elections subsequent to the taking effect of the act and it is also immaterial that the notice of such election was not published for four consecutive weeks subsequent to the taking effect of the act, and as the other provisions of said §5625-17 GC applicable to said election, were complied with, the election was legally held, and the election being legally held, the first levy of 2.70 mills made pursuant thereto, was valid.

With reference to the validity of the second levy of three mills, §5625-18b GC provides:

"The result of the election shall be certified immediately after a canvass by the board of election, to the taxing authority who shall forthwith make the necessary

levy and certify it to the county auditor who shall extend it on the tax list for collection at the next succeeding February settlement; in all other years it shall be included in the annual tax budget that is certified to the county budget commission."

The second levy, as stated above, being the levy for the year 1932, was included in the annual tax budget and certified to the county budget commission as provided in this section. While, as shown by the testimony of the deputy auditor, such three mill levy could have been included in the regular levy for school purposes, within the fifteen mill limitation, the fact that it was carried as a special levy outside of the fifteen mill limitation, was not in any way prejudicial to plaintiff as he was not required to pay any more taxes than he otherwise would have been required to pay. As the section expressly directs the levy subsequent to the levy for 1931, for such purpose to be included in the annual tax budget and does not provide an exception where the levy could be made within the fifteen mill limitation, it would appear that the manner in which the levy was carried by the auditor was the proper method. This manner of placing the levy on the tax duplicate did not affect the right of the school district to participate in the state Educational Equalization Fund, as any participation in that fund is predicated on the levies for school purposes equaling 9.5 mills, irrespective of whether such levies, or any part thereof, are without said fifteen mill limitation. We are therefore of the opinion that the second levy of three mills was legally made.

Under our holding as to the proper construction of the amending act, the provisions were not in any sense retroactive, and as the provisions of §5625-15 GC did not apply to the election held pursuant to the provisions of §5625-18a GC, compliance with the provisions of §5625-15 GC was unnecessary.

Under the provisions of §5625-18a GC the period the levy remains in effect is the number of years the school district may continue to participate in the equalization fund, which is a matter of public record and determinable from such record, and the rate of tax is fixed by definite arithmetical processes, determinable from public records, so that the rate of the tax and the period for which it is to run, are both definite and certain. The act is of uniform operation throughout the state as all school districts similarly situated were entitled to its benefits, and the tax therein provided

to be levied was by uniform rule as it was the same in every school district proceeding pursuant to the act, and the object of the tax was distinctly stated. The Tax Commission of Ohio did not fix the rate of tax. The method of determining the rate was determined by the act and the ballot, and the tax commission simply certified the result of the arithmetical processes presented by the act and ballot. The act therefore is not in contravention of the provisions of **Article II, §26; Article XII, §2;** or **Article XII, §5 of the Ohio Constitution,** as contended by the plaintiff.

Holding these views, judgment will be entered for the defendants at the costs of plaintiff.

CROW, PJ, and KLINGER, J, concur.